ALEXANDER CAMPBELL

*v.*

HORACE G. HOUGH and EDITH HOUGH, administratrix of the estate of John Stockton Hough, deceased.

[Decided January 17th, 1908.]

1. The cross-examination of one whose affidavit is annexed to or accompanies the bill, or is presented on the part of the defendant in a cause in which an injunction is prayed, taken under rule 124a of this court, must be filed; and it is available to the adverse party, even if the party procuring and conducting the cross-examination sees fit not to use it.

2. An agent who enters into an agreement in writing with a third person for the sale of lands belonging to his principals, if he acknowledges the instrument at all, can make a valid acknowledgment only by acknowledging that he signed, sealed and delivered the same in the name of, and as the voluntary act and deed of, those principals, and an acknowledgment to such an instrument by an agent as his own voluntary act and deed is a nullity; but, as no acknowledgment is required to be made of the execution of an agreement for the sale of lands, a defective acknowledgment annexed to such an instrument does not affect the validity of the contract.

3. The statute of frauds is satisfied with the signature of an agent to an agreement to convey lands, provided the agent has express authority to bind his principals by writing, and this authority may be by parol, but must be such as to permit the making of the identical contract sued on, and not a contract differing from the one actually authorized.

4. Proof of parol authority in an agent to sign an agreement in writing for the sale of lands must be clear and decisive, and this, not only as to proof of such authority generally, but, also, that the agent had authority to make all of the terms for his principals which he incorporated into the instrument.

5. If an agent authorized by parol to enter into a written agreement for the sale of lands belonging to his principals, attempts, by such an agreement, to bind them to terms which they did not authorize him to make, the agreement is void and unenforceable.

6. Where an administratrix obtained an order from the orphans court to sell the lands of her decedent for the payment of debts, the administratrix's contract to sell the lands may be specifically enforced in this court, provided the proceedings for sale were regular and the sale has been confirmed by the orphans court, and the heirs-at-law of the decedent are neither necessary nor proper parties to such suit for specific performance.

7. This court will not decree the specific performance of an agreement to sell lands made by an administratrix who has a power of sale under an order of the orphans court, if the sale has not been confirmed by the court ordering it to be made, as a decree for specific performance in such case would be inefficient and unenforceable.

8. The Orphans Court act provides what estate shall vest in the purchaser of lands at a sale made by the representative of a decedent's estate for the payment of debts; the power of such representative is a naked one and must be strictly pursued, and such representative has no power to bind the estate of the decedent by covenants for title.

9. An agreement by tenants in common to convey their undivided interests in an estate may be enforced as to either, and neither has the right to refuse performance of the contract to convey because the other is under some disability.

10. In order to obtain specific performance against one tenant in common, under an agreement to convey lands which is void as to a co-tenant, the complainant must pray specially for that relief, and if he does not do so in the first instance he may apply to amend, which application, in a proper case, will be granted.

11. Where a preliminary injunction is sought in aid of a suit for specific performance of an agreement to convey lands, the writ will be refused if the agreement relied upon is one made by an agent who clearly lacked authority to bind his principals, or if, for other substantive reasons, the agreement is palpably unenforceable.

On motion for a preliminary injunction. Heard on bill and affidavits and answer and affidavits, and order to show cause.

Mr. *Gardner H. Cain* and Mr. *John T. Bird,* for the motion.

Messrs. *James* and *Malcolm G. Buchanan, contra.*

WALKER, V. C.

The bill in this cause was filed for the specific performance of an agreement for the sale of lands entered into by Willis P. Bainbridge, Esq., as agent and attorney in fact for the defendants, Horace G. Hough and Edith Hough, administratrix, with Alexander Campbell, the complainant. The agreement is in writing under date of October 5th, 1907, and recites that the sale is to be made in consideration of $6,000; part thereof, $600, being paid to Mr. Bainbridge upon its execution; $2,200 to be paid December 5th, 1907; and the balance, $3,200 to be satisfied by the assumption by Mr. Campbell of the mortgage on the premises for that amount; the deed to be one of general warranty, and the Houghs to pay all taxes due in December. This agreement contains an acknowledgment. The certificate reads that Mr. Bainbridge acknowledged that he signed, sealed and delivered the instrument as his voluntary act and deed. Incidentally, the bill prays an injunction against the defendants from selling to James M. Donald the lands mentioned in the agreement, who, the bill alleges, had entered into a contract with the defendant, directly, for the purchase of the same premises. Both Mr. Hough and Mrs. Hough deny that they authorized Mr. Bainbridge to bind them by writing at all, and Mr. Bainbridge only says that he told Mr. Hough that he would sign the agreement, and that he, Mr. Hough, said "all right." Mr. Bainbridge does not say that Mrs. Hough authorized him to sign any agreement, only that she authorized him to sell. The sale, as before remarked, was to be for $6,000, and while the question of who was to pay commissions, the buyers or the sellers, is disputed, there is no dispute about this, namely, that Mr. Bainbridge had no authority to bind the Houghs to pay the taxes due in 1907, nor to make a deed of general warranty free from all encumbrances except the mortgage, which was to be assumed as part of the consideration.

Neither in the bill of complaint nor in the affidavit of Mr.

Bainbridge annexed to it, is it averred that express authority was given Mr. Bainbridge to bind the defendants by writing to convey their lands. The bill alleges that the defendants, by their agent, entered into an agreement in writing, setting it out, and Mr. Bainbridge, the agent, in his affidavit, states that he was requested and authorized by the defendants to make sale of the lands mentioned and described in the bill. His assertion that he informed Mr. Hough that he would sign an agreement for him is to be found in his cross-examination, taken under rule 124*a* of this court.

A question concerning the use of this cross-examination was presented on the hearing of the order to show cause, and arose in this wise: Counsel for the defendants stated that there was no averment in the bill or affidavit that Mr. Bainbridge was authorized to enter into an agreement in writing to bind them. Counsel for the complainant asserted that Mr. Bainbridge, in his cross-examination, stated that he thought Mr. Hough said that when he was ready to have an agreement signed to let him, Mr. Hough, know, and he would sign the agreement, and that Mr. Bainbridge told him that he, Mr. Bainbridge, would sign the agreement, to which Mr. Hough said "all right." Counsel for the defendants objected to the use of this cross-examination by the complainant, saying that it would not be offered or used on behalf of the defendants who procured it to be taken. The rule referred to provides that the chancellor or vice-chancellor before whom an order to show cause why an injunction should not be granted, or a motion to dissolve an injunction already granted, comes on to be heard, may order that an affiant, whose affidavit is annexed to or accompanies the bill, or is presented on the part of the defendant, shall appear and submit to cross-examination in respect to the matter contained in his affidavit, under such direction as to notice and time and officer examining, before whom such cross-examination shall be taken as may be prescribed in the order. Pending the hearing on the order to show cause counsel for the defendants applied to me for an order that Mr. Bainbridge submit to such cross-examination, and I advised an order for that purpose. The examination, taken under that order, in my judgment, is evidence for either

party who chooses to offer it. A party to a suit can always go into the papers of his adversary and use them, or such parts of them as he is advised will help his cause. It is true that the Practice act (*P. L. 1903 p. 575 § 140*) provides that if an action is at issue in a common law court either party may serve on the adverse party written interrogatories on any matter material to the issue and require written answers to the same under oath, and that the answers shall be evidence in the action if offered by the party proposing the interrogatories, but not otherwise. Section 144 of the Practice act (*P. L. 1903 p. 577*) provides that any party to an action may by order of the court or a judge be examined as a witness at the instance of the adverse party, or of anyone of the several adverse parties after issue joined and before trial; and (*P. L. 1903 p. 577 § 146*) provides that the examination and cross-examination shall be reduced to writing and signed by the party so examined, and filed, and may be used by either party at the trial. I apprehend that without the direction that the examination may be used by either party, that that right would exist, and, likewise, I am of opinion that interrogatories answered under oath by a party to a common law suit would be evidence on the trial for the party answering the interrogatories, if the party propounding them did not offer them, save for the fact that the statute, in that case, expressly provides that the answers shall be evidence only if offered by the party proposing the interrogatories, but not otherwise. Now, this cross-examination of Mr. Bainbridge was taken by virtue of an order of this court for that purpose had and obtained, and was, in my judgment, equally available to either party, and if the party procuring and conducting the cross-examination saw fit not to use it, that party had not the right to withhold it from the files, which would be to suppress it, and if filed as testimony taken in the proceeding, it was, of course, available to the adverse party. I make these observations because the objection to the use of the cross-examination was solemnly made on behalf of the party making it, and as the rule has not been construed in this regard, so far as I can find, I think it proper that a declaration should be made upon the subject.

On the filing of the bill an order was made requiring the

defendants to show cause why they should not be enjoined according to its prayer, with an *ad interim* stay, and the complainant now moves to make the order to show cause absolute.

Counsel for the defendants contend that the acknowledgment to the agreement for sale was defective in that the agent who signed the instrument acknowledged that he signed, sealed and delivered it as his voluntary act and deed, instead of doing so in the name of, and as the voluntary act and deed of, his principals. This objection is valid, but as the agreement did not need an acknowledgment to give it efficacy, the objection is ineffective.

The first question presented for solution is, was Mr. Bainbridge authorized by the defendants to make the agreement in writing which he signed on their behalf, so as to charge them with the obligation of making the conveyance.

It is settled law in this state that the statute of frauds is satisfied with the signature of an agent, to an agreement to convey lands, provided the agent has express authority to bind the principal by writing, and this authority may be by parol. *Milne* v. *Kleb, 44 N. J. Eq. (17 Stew.) 378; Lindley* v. *Keim, 54 N. J. Eq. (9 Dick.) 418.* The authority, however, must be such as to permit the making of the identical contract sued on, and not a contract differing from the one actually authorized. *Morris* v. *Ruddy, 20 N. J. Eq. (5 C. E. Gr.) 236.*

In the case of *Lindley* v. *Keim, ubi supra,* referred to on the oral argument as the *O'Reilly Case,* the court of errors and appeals said (*Lindley* v. *Keim, 54 N. J. Eq. (9 Dick.) 422*), that courts should require the proof of authority in an agent to sign a memorandum in writing for the sale of lands by parol to be clear and decisive. This, of course, means not only that proof of the authority generally must be clearly and decisively shown, but, also, that the agent had authority to make all of the terms for his principal which he incorporates into the agreement.

Speaking now to the facts with reference to the question of authorization of Mr. Bainbridge to bind the defendants by memorandum in writing for the sale of their lands, it may be remarked that Mr. Hough denies that he gave authority to the agent to sign a written agreement in his behalf; so, also, does

Mrs. Hough, and, as before stated, Mr. Bainbridge only testified that when he informed Mr. Hough that he would sign for him, he, Mr. Hough, said "all right." Therefore, I am compelled to find that Mrs. Hough never authorized Mr. Bainbridge to bind her by written agreement, and am constrained to hold that the complainant does not preponderate in the proof required to show that such authority was confided by Mr. Hough to Mr. Bainbridge.

Another thing: Both Mr. Hough and Mrs. Hough testify that they were only willing to · sell the farm for $6,000 net to themselves, and would not pay commissions out of that sum. Mr. Bainbridge testifies that they were to pay commissions. The agreement which Mr. Bainbridge assumed to make on behalf of the defendants is silent on the subject of commissions, and thereby the purchaser was not bound to pay them, but the defendants who employed the agent were left to pay the commissions. *Morris* v. *Ruddy, 20 N. J. Eq.* (*5 C. E. Gr.*) *236, 238.* This was a departure from the terms of the authorized sale, and while the question of fact in this regard is disputed, I must, under the rules of law, find in favor of the defendants, because the complainant's evidence on this question, does not preponderate.

It follows, therefore, that the agent was not clothed with authority to bind the defendants in writing for the sale of their lands, and, whether so or not, that the written agreement departed from the terms of sale confided to the agent. If such contract made by an agent varies from his instructions, the principals will not be bound by it. *Morris* v. *Ruddy, ubi supra.*

This finding is alone dispositive of the case, but there were other questions raised upon the argument, all of which were important, and I will therefore proceed to decide them.

The premises in question were owned by the defendant Horace G. Hough and his brother, the late Dr. John Stockton Hough, as tenants in common. Dr. Hough died intestate May 6th, 1900, leaving the defendant Edith Hough, widow, and Arthur S. Hough, Edward R. Hough, Henry S. Hough, Douglass R. Hough, John S. Hough and Robert H. Hough, his children, and only heirs-at-law. Mrs. Hough, the widow, was

granted administration of the estate of her deceased husband, and petitioned the orphans court of the county of Mercer for the sale of the lands of the deceased for the payment of his debts, his personal estate being insufficient for the purpose. An order for such sale was made by the orphans court on December 3d, 1901, and her power to sell at all reposes in that order. On the argument of the order to show cause counsel for the defendants urged as a ground of objection against the complainant's right to have specific performance that the contract sued on is unenforceable as to Mrs. Edith Hough, administratrix, because Mrs. Hough has no title to the premises in question, and that the undivided half of which she has a power of sale descended to her six children upon the death of her husband, subject to her dower, which six children are not parties to this suit. To this I cannot assent. She, as representative of the estate, obtained an order to sell from the orphans court, and that order empowered her to sell whatever interest the infants had in the land. There is no question here about the widow's dower. The papers show that she consented to the sale free from her estate in dower, under the act relative to sales of lands under public statutes. *Gen. Stat. p. 2987 § 30.*

If the agreement in this case, and all of its terms, had been one which the agent was authorized to make in writing, then I think it would be enforceable by the decree of this court, provided the proceedings for sale were regular and if the sale were confirmed by the orphans court. In such event this court could undoubtedly order the contract specifically performed. *Wortman* v. *Skinner, 12 N. J. Eq. (1 Beas.) 358, 381, 384; Young's Admr.* v. *Rathbone, 16 N. J. Eq. (1 C. E. Gr.) 224.*

Proceedings in the orphans court for the sale of lands for the payment of debts are proceedings *in rem,* and the heirs-at-law are not parties, at least they are not parties *eo nomine,* and jurisdiction over them is obtained *pro hac vice* by publication, without personal service. *Lawson* v. *Acton, 57 N. J. Eq. (12 Dick.) 107, 114.* This being so, the children of Dr. Hough are not, in my judgment, either necessary or proper parties to a bill for the specific performance of an agreement for sale by the representative of his estate having power of sale under an order

of the orphans court. In other words, as Mrs. Hough, under the order of the orphans court, can sell the undivided interest in the lands of which Dr. Hough died seized, then, upon a proper case made in this court, she could be decreed to carry out that sale. As, however, the sale has not been confirmed by the orphans court, this court is powerless to compel the specific performance of the agreement to sell by Mrs. Hough representing the estate of the decedent because of that fact, namely, the lack of confirmation of the sale by the court ordering it to be made. The agreement is silent upon this subject of confirmation, but the bill of complaint alleges that the conveyance is to be made in case the orphans court should approve of the sale. Now, in the presence of an unconfirmed sale by the orphans court, how can this court decree the specific performance of a contract for sale made by a vendor whose title, or rather right to sell, depends upon such confirmation? A court of equity will not decree the specific performance of a contract unless it can make an efficient decree, and one that it is able to enforce. *Pom. Eq. Jur.* (*3d ed.*) § 1405.

It is urged that the orphans court may confirm the sale before final hearing in this cause, but I doubt it, as the sale to Mr. Donald, disclosed by the answer and affidavits of the defendants, is for about $600 more than that called for in the agreement under consideration; and a sale by Mrs. Hough, as administratrix, does not fall within that class of cases of which *Morrisse* v. *Inglis, 46 N. J. Eq.* (*1 Dick.*) *306,* is an example, and in which the court of errors and appeals held that judicial sales made without irregularity or fraud and not affected by accident or mistake will not be set aside for mere inadequacy of price; but such sale is affected by section 85 of the Orphans Court act (*P. L. 1898 p. 745*), which commits the question of confirmation or rejection without limitation to judicial discretion, as construed by *Ryan* v. *Wilson, 64 N. J. Eq.* (*19 Dick.*) *797.* While this question is one which concerns the final disposition of the cause, it is noticed now, because, unless a preliminary injunction shall go, the complainant may be, and probably will be, deprived of an opportunity to have a specific performance of this agreement, even if entitled to it, for the

39

reason that the defendants will undoubtedly sell to Mr. Donald in the meantime, and procure the confirmation of that sale by the court in which it was ordered. The want of power in this court to order a specific performance of the contract under consideration, because the sale negotiated by the agent is unconfirmed, being so plainly against the complainant, I must, upon this ground, deny him preliminary relief.

It was also urged on behalf of the defendants that Mrs. Hough could not make a deed of general warranty free from encumbrances, except, of course, the encumbrance specifically excepted. This is a valid objection. The Orphans Court act (*P. L. 1898 p. 749 § 94*) provides what estate shall vest in the purchaser, namely, all of the estate of which the testator or intestate was seized at the time of his death if the order to show cause be obtained within one year thereafter, and if not obtained within that time, then all the estate of which the heirs or devisees of the testator were seized at the time of the making of such order. That is not all. The power of an administrator to sell lands under an order of the orphans court is a naked power and must be strictly pursued. *Den* v. *Lambert, 13 N. J. Law (1 Gr.) 182.* In *Lindley* v. *Keim, ubi supra,* the court of errors and appeals said (*9 Dick. 428*) that the donees of the power of sale under O'Reilly's will could not bind his estate to make a good title.

Another ground urged by the defendants is that the contract is joint, and that neither of the defendants contemplated selling an undivided half to the complainant disassociated from the sale of the other half to him at the same time, the contention being that if the agreement were valid as to one defendant and not as to the other, there could be no decree for the performance by the one on whom the agreement was binding, because that would thrust upon the one not selling a co-tenant unselected and possibly objectionable. But this, in my judgment, is inadmissible, because no tenant in common has the right to say who his co-tenant shall be, for any co-tenant being *sui juris* can alienate his undivided interest without any restraint from the other. The complainant could avail himself of the inability of either of the defendants to convey, and refuse to accept an un-

divided interest, when he had bargained for the whole, but neither of the defendants could object to convey a moiety for the reason given. Either co-tenant may charge his separate interest, or may convey or mortgage it, or become personally liable upon an undertaking respecting it. *17 Am. & Eng. Encycl. L. (2d ed.) 673.* One of several joint tenants or tenants in common may convey his undivided interest in the common property either to a co-tenant or to a stranger, and the conveyance may be of his undivided interest, either in the whole property or in a distinct or separate parcel thereof. *17 Am. & Eng. Encycl. L. (2d ed.) 681.*

A direct authority for decreeing specific performance against one tenant in common, under an agreement to convey lands which is void as to a co-tenant, is to be found in *Keator* v. *Brown,* 57 *N. J. Eq. (12 Dick.) 600;* also in *Milmoe* v. *Murphy,* 65 *N. J. Eq. (20 Dick.) 767.* In order to obtain such relief, however, the complainant must pray for it specially, and, if he does not do so in the first instance, he may apply to amend. *Keator* v. *Brown, ubi supra, 602.* It seems that there can be no decree for the conveyance of a part only of the premises in question in a given suit under the prayer for general relief, but that the complainant, if he desires such relief, must, in his pleadings, or at least on final hearing, consent to accept part performance. *Milmoe* v. *Murphy, ubi supra.* In a proper case an amendment would be allowed. In the cause under consideration (as in the *Keator Case*), the interest of Horace G. Hough is ascertained as to quantity and price, and not the slightest difficulty would be experienced in compelling him to convey his share. This, of course, upon the assumption that the contract as to him were binding, and, also, that the complainant who prays for a specific performance of the whole contract, should desire to obtain the share of Horace and would ask leave to amend the bill accordingly. This he could doubtless do under the authority of *Keator* v. *Brown, supra.*

Upon the argument of the order to show cause I was strenuously urged to make the order absolute and thus preserve the subject-matter of the suit until the final hearing. This I am unable to do. Where an injunction is sought in aid of specific

performance the writ will be refused where it appears that the contract sought to be enforced is so incomplete or uncertain as to be unenforceable. *Domestic Telegraph Co.* v. *Metropolitan Telegraph Co., 39 N. J. Eq. (12 Stew.) 160; S. C., 40 N. J. Eq. (13 Stew.) 287.* Even if the terms of the contract are complete and certain, in my opinion a preliminary injunction should also be refused, if the agreement were made by an agent who clearly lacked authority to bind his principals, or if, for other substantive reasons, the agreement is palpably unenforceable.

This disposes of all the questions raised upon the argument, and leads to the discharge of the order to show cause.