STOUT *v.* PORRITT.

1. SPECIFIC PERFORMANCE—VENDOR AND PURCHASER.
   Increase in value of land contracted to be conveyed is not, of itself, ground for either granting or refusing specific performance of the contract.

2. SAME—FIRST ESSENTIAL OF ENFORCEABLE CONTRACT.

     The first essential of specific performance is a contract ready made by the parties and enforceable according to its terms by either on performance of his own obligations thereunder; but court cannot make a contract for parties and then decree its specific performance.

3. SAME—JOINT CONTRACT TO CONVEY WHOLE ESTATE NOT ENFORCEABLE TO CONVEY SEPARATE INTERESTS.

     Where, under terms of a contract to sell a farm, all vendor's obligations were to bind all four owners named as parties of first part, all vendor's benefits were to accrue to all of them, and there was no separation or severance as to parties, estate, or obligation, and one owner refused to sign, the vendee was not entitled to specific performance by those who did sign as to their respective interests in the property, since it was to have been a joint contract by all the vendors named to convey the whole estate, and the minds of the parties never met on an agreement to convey and accept separate interests on payment of a portion of the purchase price.

4. CONTRACTS—NOT BINDING WHERE ONE OF SEVERAL PARTIES NEGLECTS TO EXECUTE.

     Covenants founded on mutuality of obligation and liability must be mutually binding on the parties, and, therefore, if one of several parties to a deed *inter partes* founded on mutual covenants neglects to execute the deed, the contract is not binding on the others who have executed it.

Appeal from Oakland; Root (Jesse H.), J., presiding. Submitted January 7, 1930. (Docket No. 14, Calendar No. 34,616.) Decided March 6, 1930.

Bill by Edward M. Stout against Edwin J. Porritt and others to compel specific performance of a land contract. Defendants filed cross-bill to declare contract void. From a decree for plaintiff against defendants Edwin J. Porritt and Emma J. Thurston, they appeal. Reversed.

*Andrew L. Moore,* for plaintiff.

*Donald C. Porritt* (*Pelton & McGee,* of counsel), for defendants.

FEAD, J. This is a suit for specific performance of a land contract. Defendants filed cross-bill, asking that the contract be declared void for various reasons.

On January 29, 1925, Donald Porritt, as administrator of the estate of Addie L. Dutton, deceased, executed to plaintiff a six months' option to purchase a 110-acre farm on land contract for $15,000, the down payment to be $5,000. It is conceded that the option was of no legal effect. However, on July 29th, plaintiff telegraphed Donald Porritt an acceptance of the option and stated the down payment had been deposited in a bank. The property was owned by heirs of Addie L. Dutton, Edwin J. Porritt, Bert Porritt, and Emma Thurston, each of whom had an undivided four-fifteenths interest, and Margaret Porritt, owning three-fifteenths. Plaintiff and his agent, Annette, got into communication with some of the defendants, and met Edwin Porritt and Emma Thurston at a bank, discussed the matter, a contract conforming to the option was drafted by the banker, signed by plaintiff, and, in the belief that the option was binding on them, it was also executed by Edwin Porritt and Mrs. Thurston. Either before or after they signed, but while the contract was still at the bank and under control of defendants, Annette went out to induce Bert Porritt to come to the bank and execute the contract. He took $5,000 in cash with him, made some sort of a tender to Bert Porritt, but the latter refused to execute the contract until he had seen his son Donald, who was an attorney. Annette returned to the bank and reported to Edwin Porritt and Mrs. Thurs-

ton, who were awaiting him, that Bert would sign the next day. Annette expected he would. Annette, Edwin Porritt, and Mrs. Thurston then took the contracts to Mrs. Edwin Porritt and Margaret Porritt, who executed them. The contract and $5,000 were left at the bank, the receipt from the banker to plaintiff reciting the money was "to be held as legal tender in Porritt-Thurston farm deal." Bert Porritt never executed the contract. On September 18th plaintiff recorded a copy of it. It does not satisfactorily appear how or when he obtained the copy.

On December 26, 1925, plaintiff, through his attorney, notified the four owners that he was ready to pay the whole purchase price and desired a deed. His position was that "there were no reservations in the contract connected with your signature, I assume you are prepared to deliver the entire parcel of land for the purchase price named in the contract," and he directed their attention to the necessity of securing "suitable release from Bert Porritt and wife in order to make good the conditions in the contract as signed by you."

On January 13, 1927, plaintiff deposited $1,600 in the bank to cover the first annual payment and interest, and the banker notified defendants of the deposit: "We are holding this amount and $5,000 deposited in July, 1925, in escrow for the convenience of the interested parties."

Defendants made no reply to these communications. While it is claimed the banker had authority to pay the executing owners their proportionate shares of the deposits, they were never so informed by anyone.

On May 4, 1927, this bill was filed, plaintiff charging that the contract bound the executing defendants

to conveyance of the whole title, and electing that, if they could not deliver the whole, he would take their individual interests on payment of proportionate purchase price, with damages for partial failure of performance.

The court refused relief against Margaret Porritt, on the ground of mental incapacity, and against Bert Porritt, because he had not signed the contract. It decreed specific performance by Edwin Porritt and Emma Thurston as to their respective interests in the property, but allowed no damages for failure to convey the whole. Defendants have appealed.

Undoubtedly, the reason defendants refused to convey, and also the reason plaintiff wanted a deed, was because the land had increased in value. Increase in value, of itself, is not a ground for either granting or refusing specific performance.

The first essential of specific performance is a contract, ready made by the parties and enforceable according to its terms by either on performance of his own obligations thereunder. The court cannot make a contract for parties and then decree its specific performance.

The instrument commences:

"This contract, made this 29th day of July, in the year one thousand nine hundred and twenty-five, between Edwin J. Porritt and Mabel E. Porritt, his wife; Bert Porritt and Aristine Porritt, his wife; Margaret A. Porritt and Emma J. Thurston, all the heirs of Addie L. Dutton, deceased, of Oakland county, Michigan, parties of the first part, and Edward M. Stout, of Pontiac, Michigan, party of the second part."

According to its terms, all the vendor's obligations were to bind all those named as parties of the

first part, and all its vendor's benefits to accrue to all of them. There was no separation or severance as to parties, estate, or obligation. The contract stated accurately the understanding of the parties who signed it. It was to have been a joint contract by all the vendors named to convey the whole estate.

Not only is there no warrant in the language of the instrument signed by Edwin Porritt and Emma Thurston for a decree requiring them to convey their separate estates, but there is no justification in fact for so construing or reforming it. Regardless of what these defendants may have intended, the minds of the parties never met on an agreement to convey and accept separate interests on payment of a proportion of the purchase price. On the contrary, plaintiff's position, consistently maintained and insisted upon, has been that these defendants were bound to deliver the whole title, and there appears in the record no communication or act of plaintiff to defendants which would justify a decree against him were the positions reversed and defendants seeking specific performance of a severable contract.

If the decree can be maintained, it must be upon the familiar principle that when a vendor is unable to convey the estate he contracts to convey, the vendee may take decree for what the vendor has and have damages for the deficiency. The contract here expresses what the parties intended—an engagement by the four owners to convey the whole title. As it was unseverable, and as Bert Porritt never executed it, the case is governed by the principle stated in *Griefen* v. *Hubbard,* 112 Ill. App. 16, quoted with approval in *Rothstein* v. *Weeks,* 224 Mich. 548, 553:

" 'Covenants founded on mutuality of obligation and liability must be mutually binding upon the

parties to them. If, therefore, one of several parties to a deed *inter partes* founded on mutual covenants neglects to execute the deed, the contract is not binding on the others who have executed it!' "

See, also, *Stub* v. *Grimes,* 38 Minn. 317 (37 N. W. 444) ; *Adler* v. *Katus,* 190 Mich. 86. In *Wayne Woods Land Co.* v. *Beeman,* 211 Mich. 360, relied on by plaintiff, the record discloses that, although the option recited three vendors, two of them delivered the instrument to the optionee after they had solicited the third to sign and she had refused. Here there was no delivery of the contract to have effect without the signatures of all the named vendors.

The decree is reversed, and one may be entered upon the cross-bill declaring the contract of no binding effect upon these defendants, with costs.

WIEST, C. J., and BUTZEL, CLARK, POTTER, SHARPE, and NORTH, JJ., concurred. McDONALD, J., did not sit.